```
                                                     U.S. DISTRICT COURT
                                                     DISTRICT OF VERMONT
                                                           FILED
            UNITED STATES DISTRICT COURT
                       FOR THE                      2016 OCT 27  PM 12: 31
               DISTRICT OF VERMONT
                                                          CLERK
UNITED STATES OF AMERICA,        )                 BY_____LAW_____
                                 )                      DEPUTY CLERK
          v.                     )   Case No. 5:12-cr-144
                                 )
EDWARD J. MAROSZ                 )
```

**OPINION AND ORDER LIFTING STAY, WITHDRAWING REFERENCE TO MAGISTRATE JUDGE, AND GRANTING DEFENDANT'S MOTION TO CORRECT SENTENCE UNDER 28 U.S.C. § 2255**
(Docs. 30, 39)

This matter came before the court on Defendant Edward J. Marosz's appeal of the Magistrate Judge's Order staying the proceeding (Doc. 39) and on his motion to correct his sentence under 28 U.S.C. § 2255. (Doc. 30.) Mr. Marosz asks the court to lift the stay imposed by the Magistrate Judge, withdraw the reference, and grant him a reduction in his sentence. He argues that his Sentencing Guideline range was calculated with reference to a "crime of violence" residual clause identical to that struck down under *Johnson v. United States*, 135 S. Ct. 2551 (2015) which held that the Armed Career Criminal Act's (the "ACCA") residual clause, 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally void for vagueness because its application "does not comport with the Constitution's guarantee of due process." *Johnson*, 135 S. Ct. at 2560. Mr. Marosz's anticipated release date from incarceration is November 25, 2016. He asserts that, in the absence of expedited treatment of his motion, he will be deprived of meaningful relief.

The government opposes the motion, arguing that the court is not required to lift the stay, that it is unclear whether Mr. Marosz is entitled to his requested relief, and that lifting the stay will require an unwarranted expenditure of resources by the parties and the federal judiciary.

Mr. Marosz is represented by Federal Public Defender Michael L. Desautels and Assistant Federal Public Defender Barclay T. Johnson. The government is represented

by Assistant United States Attorney Gregory L. Waples and Assistant United States Attorney Michael P. Drescher.

I.     **Factual and Procedural Background.**

On July 19, 2013, the court sentenced Mr. Marosz to a below-Guidelines sentence of 45 months imprisonment following his guilty plea to one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The court adopted the presentence report ("PSR") as its findings of fact. It adopted the Sentencing Guidelines recommendation set forth therein without objection.[1]

In determining Mr. Marosz's advisory Guidelines range, the court found that the offense of possession of a firearm by a convicted felon occurred on or about October 16, 2012 and that the Sentencing Guidelines (November 1, 2012 edition) applied. The court concluded that Mr. Marosz committed the offense of conviction subsequent to sustaining a felony conviction for a "crime of violence" based on the residual clause set forth in U.S.S.G. § 4B1.2(a)(2)[2] and the Second Circuit's controlling interpretation of that clause. *See* PSR at 13, ¶ 51 (citing *United States v. Brown*, 514 F.3d 256, 268-69 (2d Cir. 2008) (concluding that under New York law, burglary in the third degree of a "building" as opposed to a "dwelling" is a "crime that inherently involves a risk of personal injury" and was thus a "crime of violence within the meaning of the [residual] clause of Guidelines § 4B1.2(a)(2)") (internal quotation marks omitted). Although Mr. Marosz did not challenge this finding at the time of his sentencing, he challenges it now as a violation of Due Process.

---

[1] Mr. Marosz objected to the PSR's initial recommendation that he be subjected to the enhanced penalty provided in the ACCA, 18 U.S.C. § 924(e). Thereafter, the PSR was amended to remove the fifteen year mandatory minimum and the Chapter Four enhancements that applied in the draft PSR. *See* Addendum to the PSR.

[2] Mr. Marosz's criminal history included four additional felony burglary convictions for which the underlying records were not available. The PSR noted that Mr. Marosz had been convicted of two previous felonies, both of which would have constituted a "crime of violence" under the residual clause of U.S.S.G. § 4B1.2(a), § 2K2.1 had they received criminal history points. *See* PSR at 5, ¶ 16 n.2.

2

Under the Guidelines, a defendant's base offense level is 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense[.]" U.S.S.G. § 2K2.1(a)(4)(A). The term "crime of violence" is defined in the 2012 Guidelines Manual as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--
>
>> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>>
>> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). "Section 4B1.2(a)(1) is referred to as the 'physical force clause.' The first half of § 4B1.2(a)(2) contains the 'exemplar crimes,' and the second half the 'residual clause.'" *United States v. Van Mead*, 773 F.3d 429, 432 (2d Cir. 2014).

On or about April 15, 1997, Mr. Marosz pled guilty to a felony burglary under Vermont law and was sentenced to a split term of imprisonment of three to five years. The PSR properly concluded this conviction warranted three criminal history points.

The facts surrounding Mr. Marosz's Vermont burglary conviction are not well-established.[3] Paragraph 51 of the PSR states that the police affidavit related to this conviction alleges that Mr. Marosz burglarized Ryderbrook Pediatrics Office on March 21, 1997 in search of food, and burglarized the Lamoille Child Care Center on March 22, 1997 for an unidentified purpose. Mr. Marosz was arrested on March 23, 1997, after he admitted to entering a library in search of drugs. When the police surrounded the building, Mr. Marosz tried to run away but fell in the snow. After he was apprehended, a search of his person revealed a pocket full of coins which he admitted stealing from the

---

[3] "As a general matter, reliance on a federal PSR's factual description of a defendant's pre-arrest conduct to determine whether a prior offense constitutes a 'crime of violence' under U.S.S.G. § 4B1.2(a)(1) is prohibited." *United States v. Reyes*, 691 F.3d 453, 459 (2d Cir. 2012). The facts surrounding Mr. Marosz's Vermont burglary conviction as set forth in the PSR are nonetheless relevant because they provide no basis for concluding that Mr. Marosz committed a "crime of violence" which, in turn, is relevant to his likelihood of success on the merits.

3

building. The PSR does not indicate the time of day when Mr. Marosz's crimes took place and does not contain any indication that Mr. Marosz used any force other than prying open the library's back door.

The PSR notes that the charging document for Mr. Marosz's felony conviction states that "Edward J. Marosz entered Ryderbrook Pediatrics, knowing he was not licensed or privileged to do so, with the intent to commit larceny, contrary to 13 V.S.A. § 1201(a)." PSR at 13, ¶ 51 (emphasis omitted). The PSR does not indicate whether Mr. Marosz pled guilty to burglarizing the Lamoille Child Care Center or the library, although he also pled guilty to a petit larceny of $500 or less for which the court imposed a split sentence of three to twelve months concurrent to his felony sentence. The PSR contains no recitation of the facts to which Mr. Marosz admitted in pleading guilty.

Although the PSR recognized that the burglary of the Ryderbrook Pediatrics office was not categorically a crime of violence under U.S.S.G. § 4B1.2, it recommended the court find that "the defendant's burglary conviction in this case is a crime of violence under the residual clause of U.S.S.G. § 4B1.2(a)(2) because burglary involves conduct that present a serious potential risk of physical injury to another." *See* PSR at 13, ¶ 51. The court adopted the PSR's recommendation and determined that Mr. Marosz's base offense was 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(A).

The court found that two specific offense characteristics applied: first that the offense involved between three and seven firearms, a two level increase under U.S.S.G. § 2K2.1(b)(1)(A), and second, that the offense involved a firearm with an altered or obliterated serial number, warranting a four level increase under U.S.S.G. § 2K2.1(b)(4) and resulting in an adjusted offense level of 26.

Concluding that Mr. Marosz was entitled to a three level decrease for acceptance of responsibility, the court determined that his total offense level was 23. Mr. Marosz's three criminal history points placed him in criminal history category II. The advisory Guideline imprisonment range for offense level 23 and criminal history category II was 51-63 months. The court varied downward from that range and sentenced Mr. Marosz to 45 months imprisonment, to be followed by three years of supervised release.

If the court had applied a base offense level of 14 which was indicated in the absence of the "crime of violence" predicate, Mr. Marosz's advisory Guidelines range would have been 27-33 months imprisonment. On July 19, 2013, Mr. Marosz was remanded into federal custody, and he has served approximately 38 months of his 45 month sentence.

In *Blow v. United States*, 829 F.3d 170 (2d Cir. 2016), the Second Circuit instructed:

> The Supreme Court has held that *Johnson* announced a new rule of constitutional law that is retroactive on collateral review. Furthermore, the statutory language that was found unconstitutionally vague in *Johnson* is identical to the language in § 4B1.2(a)(2) now challenged by [the defendant]. The Supreme Court recently granted certiorari in another . . . case to determine, *inter alia*, the precise question at issue here—whether *Johnson* applies retroactively to § 4B1.2(a)(2)'s residual clause. . . . [B]ecause the Supreme Court will likely decide in *Beckles* whether *Johnson* applies retroactively to the Guidelines, the district court is instructed to hold [the defendant's] § 2255 motion in abeyance pending the outcome of *Beckles*. The district court is free to consider termination of the stay, on motion or sua sponte.

*Id.* at 172-73 (citations omitted).

Based on the Second Circuit's guidance in *Blow*, the Magistrate Judge stayed adjudication of Mr. Marosz's § 2255 motion. Mr. Marosz asks the court to lift that stay and withdraw the reference from the Magistrate Judge.

**II.   Conclusions of Law and Analysis.**

  **A.   Whether to Lift the Stay.**

Mr. Marosz asks the court to consider the standards governing a stay in a habeas corpus proceeding in determining whether to lift the stay in his case. He points out that, like a petitioner for habeas corpus, he will be subjected to unlawful confinement unless the stay is lifted and the merits of his petition are reached. The government responds that the Magistrate Judge did not clearly err in issuing the stay because Mr. Marosz is not likely to succeed on the merits of his § 2255 motion, and the stay prevents the unnecessary expenditure of governmental and judicial resources if *Beckles* is ultimately decided in the government's favor.

5

This court "may reconsider any pretrial matter [decided by a magistrate judge] where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Without deciding whether the habeas standard applies, the court agrees that the following factors are instructive in determining whether a stay should be granted or lifted: (1) whether the petitioner has made a strong showing of a likelihood of success on the merits; (2) whether the petitioner will be irreparably injured absent a stay; (3) whether the issuance of a stay will substantially injure other interested parties; and (4) whether the public interest support a stay. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (listing factors governing the issuance of a stay); *see also Mohammed v. Reno*, 309 F.2d 95, 100 (2d Cir. 2002) ("Four criteria are relevant in considering whether to issue a stay of an order of a district court . . . pending appeal: the likelihood of success on the merits, irreparable injury if a stay is denied, substantial injury to the party opposing a stay if one is issued, and the public interest.").

The Supreme Court disfavors the issuance of a stay pending its determination of a non-party's case "if there is even a fair possibility that the stay . . . will work damage to someone else" and if the party seeking the stay "make[s] out a clear case of hardship or inequity." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) (observing that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."). The Second Circuit recognized the possibility of hardship or inequity in *Blow* by observing that "[t]he district court is free to consider termination of the stay[.]" *Blow*, 829 F.3d at 173.

Mr. Marosz has established that he may be irreparably harmed if the court does not lift the stay and reach the merits of his petition. As of the date of this Order, he has served approximately 38 months of his sentence, which is five months longer than the high end of the advisory Guidelines range if the court had used a base offense level of 14. He has thus established that if the stay is not lifted and his requested relief is ultimately granted, it will be meaningless.

Waiting until after the Supreme Court decides *Beckles* may further injure Mr. Marosz as the Supreme Court is scheduled to hear oral argument on November 28, 2016,

three days after his anticipated release date. *See Guerrero v. United States*, 2016 WL 4939072, at *3 (S.D.N.Y. Sept. 6, 2016) (denying government's motion for a stay pending Supreme Court's decision in *Beckles* where, "whether or not his motion warrants relief, [defendant] should not be forced to await the decision in *Beckles*, which may be issued following his [February 13, 2017] release date"). It is likely to be several months thereafter until a decision is issued. Against this backdrop, any interest the government asserts in minimizing expenditures and conserving judicial resources is substantially outweighed by Mr. Marosz's potential right to relief and the public's strong interest in having the court "summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

    Mr. Marosz has further established a likelihood that he will prevail on the merits. He has demonstrated that his base offense level was calculated with reference to a "crime of violence" residual clause with language identical to that deemed impermissibly vague in *Johnson*. In an unpublished decision, the Second Circuit concluded that the residual clause is unconstitutionally vague, and as a result, a conviction for attempted second-degree burglary was "no longer a predicate offense . . . in light of *Johnson v. United States*[.]" *See United States v. Welch*, 641 F. App'x 37, 42-43 (2d Cir. 2016) (holding that "[b]ecause [New York's burglary] statute criminalizes conduct that does not fall exclusively within § 4B1.2(a)(1)'s 'use of physical force' clause or § 4B1.2(a)(2)'s enumerated offenses, for the enhancement to apply, the government must have 'shown that the plea 'necessarily' rested on a fact identifying the conviction as a predicate offense.'"). A similar conclusion is warranted in this case.

    Under Vermont law, "[a] person is guilty of burglary if he or she enters any building or structure knowing that he or she is not licensed or privileged to do so, with the intent to commit a felony, petit larceny, simple assault, or unlawful mischief." 13 V.S.A. § 1201(a). The plain language of § 1201(a) does not require the use of physical force as an essential element of the crime. "In looking beyond the statutory definition to determine whether a conviction under a divisible statute is a crime of violence, a district court's inquiry is 'circumscribed.'" *Welch*, 641 F. App'x at 43. "A sentencing court

must limit itself to "examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005).

In this case, the government proffers no permissible sources regarding the nature of Mr. Marosz's Vermont felony burglary conviction beyond the information contained in the PSR. Moreover, in opposing Mr. Marosz's requested relief, the government does not claim that it can establish that Mr. Marosz's guilty plea to the felony Vermont burglary "'necessarily' rested on a fact identifying the conviction as a predicate offense." *United States v. Savage*, 542 F.3d 959, 964 (2d Cir. 2008) (citing *Shepard*, 544 U.S. at 24). To the contrary, the facts set forth in the PSR strongly support a conclusion that no use of physical force will be found. Mr. Marosz is therefore likely to establish that the only reason why his base offense level was 20 as opposed to 14 was because the court followed *Brown* which has since been abrogated by *Johnson*. He is therefore further likely to establish that he is entitled to his requested relief if *Beckles* concludes that *Johnson* applies retroactively to the "crime of violence" residual clause in the Guidelines.

For the foregoing reasons, the court GRANTS Mr. Marosz's motion for review of the Magistrate Judge's Order staying the case, LIFTS the stay, and withdraws the reference.

### B. Whether it is Likely that *Beckles* will Authorize the Requested Relief.

Mr. Marosz asserts that his conviction under 13 V.S.A. § 1201(a) for burglary of a professional business is not a "crime of violence" under *Johnson*. He argues that *Beckles* is likely to determine that *Johnson* applies retroactively to the Guidelines' "crime of violence" residual clause. Without disagreeing that Mr. Marosz's Vermont burglary conviction is not a "crime of violence" under *Johnson*,[4] the government counters that *Johnson* sets forth a substantive rule for ACCA cases, but not Guidelines cases, and that because any potential errors in Guidelines cases do not result in sentences that are "not

---

[4] The government concedes that "[a] ruling against the Government in *Beckles* would probably invalidate the crime-of-violence enhancement in [Mr.] Marosz's case." (Doc. 41 at 8 n.3.)

8

authorized by substantive law," no constitutional violation has occurred. *Welch v. United States*, 136 S. Ct. 1257, 1266 (2016).

The majority of the U.S. Courts of Appeals have concluded that *Johnson* applies to the "crime of violence" residual clause set forth in the Sentencing Guidelines. The Second, Third, Sixth, and Tenth Circuits have held that *Johnson* invalidates the "crime of violence" residual clause in the Guidelines.[5] The First, Fifth, and Ninth Circuits have required resentencing based upon the government's concession that, under *Johnson*, the Guidelines' residual clause is unconstitutionally vague.[6] *Beckles* is thus likely to be resolved in Mr. Marosz's favor.

### C. Whether Mr. Marosz's § 2255 Petition should be Granted.

Even if the *Beckles* Court determines that *Johnson* is not retroactive for Guidelines cases, there remains no legitimate basis on which to deprive Mr. Marosz of his requested relief. Application of the "crime of violence" residual clause nearly doubled Mr. Marosz's advisory Guidelines sentencing range. "For any court to say that this disparity

---

[5] *See United States v. Welch*, 641 F. App'x 37, 42 (2d Cir. 2016) (concluding "attempted second-degree burglary is . . . no longer a predicate offense under the residual clause of § 4B1.2(a)(2)"); *United States v. Maldonado*, 636 F. App'x 807, 809 (2d Cir. 2016) (applying *Johnson* to Guidelines cases because "the operative language of Guideline § 4B1.2(a)(2)'s residual clause and the ACCA's residual clause is identical"); *United States v. Pawlak*, 822 F.3d 902, 903 (6th Cir. 2016) ("In light of *Johnson*, and given the legal force of the Guidelines as the framework for sentencing, we join the majority of our sister circuits in invalidating the Guidelines' 'residual clause' as unconstitutionally vague."); *United States v. Townsend*, 638 F. App'x 172, 177-78 (3d Cir. 2015) ("Although *Johnson* addressed the constitutionality of the ACCA and not the career offender provision of the Guidelines, the language of the residual clause in the ACCA is identical to the language in the Guidelines' career offender enhancement[.] . . . Under the Supreme Court's ruling in *Johnson*, as applied to the Guidelines, [the defendant's] prior conviction for attempting to elude a police officer is not a crime of violence."); *United States v. Madrid*, 805 F.3d 1204, 1210-11 (10th Cir. 2015) ("In light of the Supreme Court's decision in *Johnson v. United States*, we hold that the residual clause is unconstitutionally vague, and cannot be used to justify the enhancement of [the defendant's] sentence") (citation omitted).

[6] *See United States v. Soto-Rivera*, 811 F.3d 53, 59 (1st Cir. 2016) (remanding case for resentencing "in light of the government's concession that *Johnson* invalidates the residual clause in Guidelines § 4B1.2(a)(2)"); *United States v. Benavides*, 617 F. App'x 790, 790 (9th Cir. 2015) ("In light of the government's concession . . . that *Johnson v. United States* applies to the U.S. Sentencing Guidelines, [the defendant's] sentence is hereby vacated and the matter is remanded to the district court for resentencing forthwith.").

9

had no or limited impact on the sentence would mean that the Guidelines were discounted among the sentencing factors to the point of being almost ignored." *United States v. Valesquez*, 2016 WL 4148316, at *3 (E.D.N.Y. Aug. 4, 2016).

28 U.S.C. § 2255(a) provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A non-jurisdictional, non-constitutional error must rise to a "fundamental defect which inherently results in a complete miscarriage of justice" in order to present a cognizable claim under § 2255. *Hill v. United States*, 368 U.S. 424, 428 (1962). Where the error in sentencing is alleged to be constitutional in nature, the "fundamental defect" standard does not apply. *See United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (ruling that while an error in calculating an advisory Sentencing Guidelines is generally not the basis for a collateral attack under § 2255, relief is available for "an error of constitutional . . . magnitude").

In this case, the court was required by federal law to consider "the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A). The court followed this statutory mandate and its 45 month sentence was a direct product of the impermissibly vague "crime of violence" residual clause set forth in the applicable Guidelines. In the absence of the residual clause, it is virtually certain that Mr. Marosz would no longer be confined to imprisonment as the court would not have imposed an above Guidelines sentence. Mr. Marosz's continued confinement is therefore the result of a fundamental defect in his sentencing which, if not corrected, will result in a miscarriage of justice. *See Hill*, 368 U.S. at 428.[7] Mr. Marosz has therefore established that he is entitled to his requested relief under 28 U.S.C. § 2255(a).

---

[7] *See also United States v. Jordan*, 2016 WL 3965212, at *4 (E.D. Wash. July 22, 2016) ("The advisory guideline range is arguably the single most important piece of information a Court

The court therefore GRANTS Mr. Marosz's motion, VACATES his sentence, and will schedule a resentencing forthwith.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 27th day of October, 2016.

Christina Reiss, Chief Judge
United States District Court

---

considers in sentencing for a Defendant.  Some have called it the 'lodestone' of sentencing. Whatever it is called, it has a direct and manifest effect on the sentences a court imposes on defendants who appear before it. . . . In fact, because of the importance of the sentencing guidelines and the weight judges give them during sentencing, the Court finds that the new rule articulated in *Johnson*, and made retroactive in *Welch*, is a substantive rule when applied to the sentencing guidelines' definition of 'crime of violence' and 'career offender,' and is, therefore, retroactively applicable.") (citation omitted); *United States v. Gentry*, 2016 WL 3647331, at *9 (D. Or. July 7, 2016) (granting defendant's § 2255 motion to vacate or correct his sentence where defendant "was originally sentenced under a framework that was 'infected' by the wrongful conclusion that [defendant] should be sentenced as a career offender, an 'error of constitutional dimensions.'  This 'wrong framework' was 'in a real sense the basis for [defendant's] sentence.'") (citation omitted).